## STATE v. ERNST, ET AL.

(No. 1498; March 5, 1929; 275 Pac. 110)

(Rehearing denied, see 277 Pac. 8)

Before BLUME, C. J., KIMBALL, J. and BURGESS, District Judge.

*Edward T. Lazear* and *Arthur R. Morrison,* for appellant.

66

*W. O. Wilson,* Attorney General, and *John Dillon,* Spe
cial Assistant Attorney General, for respondent.

*Edward T. Lazear* and *A. R. Morrison,* in reply.

BURGESS, District Judge.

The defendants were convicted in the District Court of Laramie County of manufacturing intoxicating liquor and have brought the case here for review.

The facts are undisputed and in substance are that about midnight, February 15, 1927, the sheriff of Laramie County in company with others came upon a building recently constructed in the bottom of a canon, near a spring, remote from human habitation and about 40 miles from Cheyenne. Close by was a truck partly filled with corn sugar. Entering the building the officers found the two defendants, forty-four barrels of corn-sugar mash, a boiler filled with the same kind of mash, three gas burners under it lighted, and a coil surrounded with water attached to the boiler. Steam and a liquid in drops were issuing from the end of the coil. The evidence, however, does not disclose what this liquid was.

The sheriff after testifying that he was acquainted with the means and devices used to manufacture intoxicating liquor was interrogated as follows:

"Q. Tell this jury, if you know, Mr. Carroll, what the exhibits (the boiler, coil and gas burners) as you found them at the time you mentioned, were being used for?

A. The manufacture of liquor.

Q. The liquor commonly called moonshine.

A. Yes, sir."

The evidence does not disclose that a finished product in the form of intoxicating liquor had resulted from the operation of the still. It shows only that the defendants were engaged in the making of liquor, the final process set in motion by them not yet being complete when interrupted by the officers.

On the theory that there was no offense until there was a completed product defendants counsel requested the following instruction which was refused:

''The statute of this State provides that any person who manufacturers liquor as by the statute defined, shall upon conviction be punished. The word ''manufactures'' as in our statute used anticipates completed product of liquor as defined by the statute, and as liquor is defined by these instructions.''

The court then gave the following:

''You are instructed that to constitute the offense of manufacturing intoxicating liquor it is not necessary that the product of the manufacture should be complete. Manufacture is the process of making by art or reducing materials into form fit for use, by the hand or by machine; and one employed in this process is manufacturing.''

Chapter 128 of the Wyoming 1925 Session Laws reads ''any person who manufactures liquors in violation of this act'' shall be punished, etc., and the word ''liquor'' is by our statute to be construed to include, among other things, whiskey containing one-half of one per cent or more of alcohol by volume and fit for beverage purposes. Sec. 2, p. 149, Wyo. Session Laws 1921.

The word manufacture is not a technical term. The lower court in defining it in the instruction given adopted one of the common definitions given by lexicographers, namely, that ''manufacture is the process of making by art or reducing materials into form fit for use, by the hand or by machine.'' The acts of the defendants came clearly within this definition. They were tending a whiskey still in operation. They were engaged in the process or operation of making moonshine whiskey. All things necessary to the making of the whiskey had been done by them, and nothing remained but to wait until the final process, already set in motion by them, had produced that which the apparatus and its contents were calculated and designed to produce, namely, whiskey. They were, therefore, manufacturing liquor, although suf-

ficient time it seems had not elapsed for the product to be completed.

But it is said that until there is a completed product it would not be known that what was manufactured was liquor containing more than one-half of one per cent of alcohol and fit for beverage purposes and that it is only such liquor the manufacture of which is forbidden. The answer to this is that under the facts in this case the inference is clearly justifiable that had the process been completed the product would have been a prohibited liquor. The sheriff testified that the still was being used at the time for the manufacture of moonshine whiskey. That it was so being used is undisputed. This court in the case of State v. Alderilla, 37 Wyo. 478, 263 Pac. 616, held that the term "moonshine whiskey" connotes whiskey containing more than one-half of one per cent of alcohol and fit for beverage purposes.

The courts of this country have in several cases determined what constitutes the manufacture of intoxicating liquor.

The facts in the case of People v. Nanninga, 213 Mich. 354, 181 N. W. 1014, are quite similar to the facts in the case at bar. In that case the defendant had a whiskey still which was apparently in operation but the process had not yet reached the point where there was a finished product. Discussing the question as to whether there was a manufacture within the statute declaring it to "be unlawful to manufacture intoxicating liquors," the court said:

"The purpose of this statute is to prohibit all manufacture of intoxicating liquors, and it reaches and stops all steps in the actual process of manufacture, up to and including the finished product. * * * To manufacture within the purview of this statute means not only to produce or create, but covers as well the active efforts and the means employed in making the prohibited liquor. There can be no intoxicating liquor distilled without effort assisted by means of producing and one actually engaged

in the effort of making such liquor having assembled and actually using the method and means calculated to that end falls within the statute making it unlawful to manufacture intoxicating liquor.''

In State v. Hoffman, 132 Wash. 263, 232 Pac. 278, the officers discovered a still in operation but it did not appear that intoxicating liquor had actually been produced. The court quotes with approval the language of the Supreme Court of Michigan in People v. Nanninga and holds that the defendant was guilty of the manufacture though there was no finished product.

In the following cases it is held that there may be a manufacture of liquor within the statute, before the completion of the product. State v. Ravan, 91 S. C. 265, 74 S. E. 500; State v. Lehna, 47 S. D. 115, 196 N. W. 495; State v. Denner, 159 Minn. 189, 198 N. W. 430; State v. Horner, 174 N. C. 788, 94 S. E. 291. Some of the cited cases go further than we need to go in the case at bar. We express no opinion on those decisions indicating that a conviction of manufacturing liquor is supported by evidence merely of possession of utensils suitable for use for that purpose.

The judgment is affirmed.

*Affirmed.*

BLUME, Ch. J., and KIMBALL, J., concur.

ON PETITION FOR REHEARING

BURGESS, District Judge.

A rehearing has been asked on the ground that the court erred in holding the evidence sufficient to sustain the conviction.

The sufficiency of the evidence is challenged because the witness Carroll, after testifying that the still was being used at the time for the manufacture of moonshine whiskey, stated on cross examination that he did not know what the liquid was issuing in drops from the end of the coil. This

confession of ignorance as to the nature of the liquid nullifies, it is said, his testimony that the still was being employed to make a prohibited liquor. His testimony was a matter for the jury. They could believe it in whole or in part. There certainly was not in it any such repugnancy as to warrant us in saying that the jury should have rejected it in toto. He testified that the still was being used for the manufacture of moonshine whiskey. In this he was corroborated by all the facts in the case. The jury evidently believed him. As it was unnecessary to show that the process had reached the stage of a completed product, it was likewise unnecessary to show the nature of the liquid just commencing to form in drops at the end of the coil.

It is also said it must appear that the apparatus and its contents were capable at the time of producing intoxicating liquor. If, as the witness testified, the still with its contents of corn sugar mash, was being used to make whiskey, its capability of producing that for which it was being used would seem to us sufficiently to appear.

The petition for rehearing will be denied.

*Rehearing denied.*

BLUME, Ch. J., and KIMBALL, J., concur.